THE STATE OF OHIO, APPELLANT, *v.* SWANN, APPELLEE.

[Cite as *State v. Swann,* 119 Ohio St.3d 552, 2008-Ohio-4837.]

(No. 2007–1046—Submitted May 7, 2008—Decided October 1, 2008.)

O'DONNELL, J.

{¶ 1} The state appeals from a decision of the Franklin County Court of Appeals that reversed Christopher Swann's felonious-assault conviction because the trial court had excluded the testimony of four witnesses who were prepared to testify at trial that another person, Delmar Carlisle, claimed to have committed the offense.

{¶ 2} The issue in this case is whether Evid.R. 804(B)(3), which requires a trial court to exclude an unavailable declarant's statement against penal interest "unless corroborating circumstances clearly indicate the trustworthiness of the statement," deprives a defendant of the constitutional right to present a complete defense. Because the Ohio Rule of Evidence at issue here rationally serves a legitimate state interest in ensuring the admission of trustworthy testimony, it is constitutional. Accordingly, the judgment of the court of appeals is reversed.

## Facts and Procedural History

{¶ 3} On the evening of June 25, 2005, John Stith saw several neighbors shooting guns into the air near his south Columbus residence, and he went outside to demand that they stop shooting. After exchanging words with them, he began walking back toward his home, and someone behind a nearby bush said, "F* * * you." Stith recognized the voice as belonging to Christopher Swann, one of those who had been shooting and someone he had known for about seven years. He turned, saw Swann, and then saw a flash of light from Swann's direction as a bullet struck him in the neck, causing him to fall to the ground. Another round hit Stith in his left leg. Stith survived, but the wound to his neck rendered him unable to control his left hand.

{¶ 4} The grand jury returned indictments against Swann for felonious assault with a firearm specification and having a weapon while under a disability. He

pleaded not guilty, waived his right to a jury trial on the weapon-under-disability count, and tried the felonious-assault count to a jury. During trial, the state called several witnesses, including Stith and another neighbor, Kavar Thompson, who testified that he saw Swann shoot Stith. In his defense, Swann presented an alibi, as several persons testified that at the moment Stith was shot, Swann was several houses away, socializing with them at a neighborhood gathering.

{¶ 5} As part of his defense, Swann also claimed that another neighbor, Delmar Carlisle, had admitted to shooting Stith. Swann sought admission not only of Carlisle's testimony but also that of four witnesses, Lisa Hughes, Cierra Hughes, Tiffany Hughes, and Tia Holland, each of whom allegedly heard Carlisle's admission. During his voir dire to determine whether he would admit to the shooting on the witness stand, Carlisle invoked his right against self-incrimination on advice of counsel and refused to answer any questions about the Stith shooting. As a result, the trial court declared him unavailable to testify during trial.

{¶ 6} The trial court also excluded the testimony of the four witnesses—Lisa, Cierra, and Tiffany Hughes, and Tia Holland—ruling that Swann had not presented sufficient corroborating evidence to support the trustworthiness of Carlisle's admission in conformity with the hearsay exception for statements against penal interest, as set forth by Evid.R. 804(B)(3).

{¶ 7} After the jury began deliberating, Swann proffered the testimony of these four witnesses. Lisa Hughes and her daughters, Cierra and Tiffany, each testified that Carlisle had bragged about shooting Stith. They also testified to having a close relationship with their cousin, Tia Holland, by whom Swann has a daughter. In her testimony, Holland related that Carlisle told her several days before the shooting that Stith had asked to have sex with Carlisle's pregnant girlfriend. Holland also testified that Carlisle admitted that he had shot Stith and that he was sorry for allowing Swann to face trial for that shooting.

{¶ 8} The jury returned a verdict finding Swann guilty of felonious assault and the firearm specification, and the trial court acquitted Swann of the weapon-under-disability count. The trial court sentenced Swann to a term of incarceration of six years for the felonious-assault count, to be served consecutively to a three-year term for the firearm specification.

{¶ 9} Swann appealed to the Tenth District Court of Appeals, arguing that the trial court abused its discretion in finding insufficient corroborating evidence to admit the testimony of the four witnesses regarding Carlisle's statements against penal interest pursuant to Evid.R. 804(B)(3).

{¶ 10} The court of appeals reversed Swann's conviction, but the majority did not agree on a basis for the decision: Judge Tyack relied on *Holmes v. South Carolina* (2006), 547 U.S. 319, 126 S.Ct. 1727, 164 L.Ed.2d 503, and ruled the

exclusion of Carlisle's statements against penal interest pursuant to Evid.R. 804(B)(3) unconstitutional because it denied Swann the opportunity to present a complete defense—i.e., that someone else shot Stith. *State v. Swann*, 171 Ohio App.3d 304, 2007–Ohio–2010, 870 N.E.2d 754, ¶ 12. Judge Brown did not agree with Judge Tyack's analysis of *Holmes*, but she concurred in the judgment on the basis that the trial court erred in finding insufficient corroborating evidence to admit Carlisle's statements. Id. at ¶ 35–36. Judge Sadler dissented, concluding both that Evid.R. 804(B)(3) is constitutional and that the trial court had not abused its discretion in excluding the hearsay testimony for lack of sufficient corroborating evidence. Id. at ¶ 38, 49.

{¶ 11} The state appealed, and we agreed to review one proposition of law: "The Federal Constitution does not prohibit a trial court from applying the 'corroboration' requirement in Evid.R. 804(B)(3) to exclude hearsay testimony offered by a criminal defendant." In its brief to this court, the state asserts that the corroboration requirement of Evid.R. 804(B)(3) is constitutional. Swann, on the other hand, urges us to adopt Judge Tyack's analysis of *Holmes* and to hold that application of the corroboration requirement in Evid.R. 804(B)(3) deprived him of an opportunity to present a complete defense.

### Right to a Meaningful Opportunity to Present a Complete Defense

{¶ 12} In *Chambers v. Mississippi* (1973), 410 U.S. 284, 294, 93 S.Ct. 1038, 35 L.Ed.2d 297, the court recognized that "[t]he right of an accused in a criminal trial to due process is, in essence, the right to a fair opportunity to defend against the State's accusations." Although *Chambers* referred to due process, the court has since explained that "[w]hether rooted directly in the Due Process Clause of the Fourteenth Amendment or in the Compulsory Process or Confrontation clauses of the Sixth Amendment, the Constitution guarantees criminal defendants 'a meaningful opportunity to present a complete defense.'" (Citations omitted.) *Crane v. Kentucky* (1986), 476 U.S. 683, 690, 106 S.Ct. 2142, 90 L.Ed.2d 636, quoting *California v. Trombetta* (1984), 467 U.S. 479, 485, 104 S.Ct. 2528, 81 L.Ed.2d 413, and citing *Chambers*, 410 U.S. 284, 93 S.Ct. 1038, 35 L.Ed.2d 297; and *Washington v. Texas* (1967), 388 U.S. 14, 23, 87 S.Ct. 1920, 18 L.Ed.2d 1019. As stated in *Crane*, "That opportunity would be an empty one if the State were permitted to exclude competent, reliable evidence * * * when such evidence is central to the defendant's claim of innocence." 476 U.S. at 690, 106 S.Ct. 2142, 90 L.Ed.2d 636.

{¶ 13} The court has consistently recognized, however, that this constitutional right is not absolute and does not require the admission of *all* evidence favorable to the defendant. See, e.g., *United States v. Scheffer* (1998), 523 U.S. 303, 308, 118 S.Ct. 1261, 140 L.Ed.2d 413 ("A defendant's right to present relevant evidence is not unlimited, but rather is subject to reasonable restriction"); *Taylor*

*v. Illinois* (1988), 484 U.S. 400, 410, 108 S.Ct. 646, 98 L.Ed.2d 798 ("The accused does not have an unfettered right to offer testimony that is incompetent, privileged, or otherwise inadmissible under standard rules of evidence"); *Rock v. Arkansas* (1987), 483 U.S. 44, 55, 107 S.Ct. 2704, 97 L.Ed.2d 37 ("the right to present relevant testimony is not without limitation").

{¶ 14} As the court acknowledged in *Chambers,* "In the exercise of this right, the accused, as is required of the State, must comply with established rules of procedure and evidence designed to assure both fairness and reliability in the ascertainment of guilt and innocence." 410 U.S. at 302, 93 S.Ct. 1038, 35 L.Ed.2d 297. The court has further emphasized that "[s]tate and Federal Governments unquestionably have a legitimate interest in ensuring that reliable evidence is presented to the trier of fact in a criminal trial. Indeed, the exclusion of unreliable evidence is a principal objective of many evidentiary rules." *Scheffer,* 523 U.S. at 309, 118 S.Ct. 1261, 140 L.Ed.2d 413, citing Fed.R.Evid. 702, 802, and 901, and *Daubert v. Merrell Dow Pharmaceuticals, Inc.* (1993), 509 U.S. 579, 589, 113 S.Ct. 2786, 125 L.Ed.2d 469.

{¶ 15} Accordingly, in *Scheffer* the court clarified that "*Chambers* therefore does not stand for the proposition that the defendant is denied a fair opportunity to defend himself whenever a state or federal rule excludes favorable evidence." Id. at 316, 118 S.Ct. 1261, 140 L.Ed.2d 413. Rather, it emphasized, "state and federal rulemakers have broad latitude under the Constitution to establish rules excluding evidence from criminal trials. Such rules do not abridge an accused's right to present a defense so long as they are not 'arbitrary' or 'disproportionate to the purposes they are designed to serve.'" Id. at 308, 118 S.Ct. 1261, 140 L.Ed.2d 413, quoting *Rock,* 483 U.S. at 56, 107 S.Ct. 2704, 97 L.Ed.2d 37.

### Holmes v. South Carolina

{¶ 16} The factual pattern here, as noted by the appellate court, is similar to that presented in *Holmes.* There, the state presented forensic evidence that connected Holmes to the scene of the crime, while Holmes sought to introduce evidence that another man had committed the crime. 547 U.S. at 323, 126 S.Ct. 1727, 164 L.Ed.2d 503. The trial court excluded the exculpatory evidence pursuant to a South Carolina rule that had been interpreted to bar evidence of third-party guilt unless it " 'raise[s] a reasonable inference or presumption as to [the defendant's] own innocence.'" Id. at 323–324, 126 S.Ct. 1727, 164 L.Ed.2d 503, quoting *State v. Gregory* (1941), 198 S.C. 98, 104, 16 S.E.2d 532. Under that rule, evidence of third-party guilt is inadmissible if it only " ' "cast[s] a bare suspicion upon another" ' or ' "raises a conjectural inference as to the commission of a crime by another." ' " Id., quoting 16 Corpus Juris 560.

{¶ 17} The South Carolina Supreme Court affirmed the trial court's evidentiary ruling and held that " 'where there is strong evidence of an appellant's guilt,

especially where there is strong forensic evidence, the proffered evidence about a third party's alleged guilt' may (or perhaps must) be excluded." Id. at 329, 126 S.Ct. 1727, 164 L.Ed.2d 503, quoting *State v. Holmes* (2004), 361 S.C. 333, 342, 605 S.E.2d 19.

{¶ 18} The United States Supreme Court granted certiorari and unanimously vacated the state court judgment, holding that the South Carolina evidentiary rule deprived Holmes of a meaningful opportunity to present a complete defense. Specifically, the court stated that the rule was arbitrary because, under it, "the trial judge does not focus on the probative value or the potential adverse effects of admitting the defense evidence of third-party guilt." 547 U.S. at 329, 126 S.Ct. 1727, 164 L.Ed.2d 503. The court noted, "Instead, the critical inquiry concerns the strength of the prosecution's case: If the prosecution's case is strong enough, the evidence of third-party guilt is excluded even if that evidence, if viewed independently, would have great probative value and even if it would not pose an undue risk of harassment, prejudice, or confusion of the issues." Id. As the court further observed, "Just because the prosecution's evidence, *if credited*, would provide strong support for a guilty verdict, it does not follow that evidence of third-party guilt has only a weak logical connection to the central issues in the case." (Emphasis sic.) Id. at 330, 126 S.Ct. 1727, 164 L.Ed.2d 503.

{¶ 19} Although the United States Supreme Court determined that the South Carolina rule did not "rationally serve the end that [it was] designed to further," id. at 331, 126 S.Ct. 1727, 164 L.Ed.2d 503, *Holmes* did not hold that every rule that excludes evidence of third-party guilt is necessarily unconstitutional or that a criminal defendant has a right to present *all* evidence of third-party guilt. Rather, in *Holmes,* the court adhered to its earlier decisions in *Chambers, Crane, Rock,* and *Scheffer,* and reiterated that the right to present a complete defense "is abridged by evidence rules that 'infring[e] upon a weighty interest of the accused' and are ' "arbitrary" or "disproportionate to the purposes they are designed to serve." ' " *Holmes,* 547 U.S. at 324–325, 126 S.Ct. 1727, 164 L.Ed.2d 503, quoting *Scheffer,* 523 U.S. at 308, 118 S.Ct. 1261, 140 L.Ed.2d 413, quoting *Rock,* 483 U.S. at 56, 107 S.Ct. 2704, 97 L.Ed.2d 37.

### Constitutionality of Evid.R. 804(B)(3)

{¶ 20} We next consider Ohio's Evid.R. 804(B)(3), which provides:

{¶ 21} "**Hearsay exceptions.** The following are not excluded by the hearsay rule if the declarant is unavailable as a witness:

{¶ 22} " * * *

{¶ 23} "(3) **Statement against interest.** A statement that was at the time of its making so far contrary to the declarant's pecuniary or proprietary interest, or so far tended to subject the declarant to civil or criminal liability, or to render

invalid a claim by the declarant against another, that a reasonable person in the declarant's position would not have made the statement unless the declarant believed it to be true. *A statement tending to expose the declarant to criminal liability, whether offered to exculpate or inculpate the accused, is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement."* (Emphasis added.)

{¶ 24} In *State v. Sumlin* (1994), 69 Ohio St.3d 105, 630 N.E.2d 681, we explained that Evid.R. 804(B)(3) contains "significant hurdles which must be overcome by the proponent of the statement" because of " 'the obvious suspicion with which the drafters of the Rule regarded a statement exposing "the declarant to criminal liability" but exculpating the accused.' " Id. at 108, 630 N.E.2d 681, quoting *United States v. Salvador* (C.A.2, 1987), 820 F.2d 558, 561 (discussing Fed.R.Evid. 804(b)(3)).[1] The 1972 Advisory Committee Notes to Fed.R.Evid. 804(b)(3) similarly observe a general "distrust of evidence of confessions by third persons offered to exculpate the accused arising from suspicions of fabrication either of the fact of the making of the confession or in its contents, enhanced in either instance by the required unavailability of the declarant. * * * The requirement of corroboration should be construed in such a manner as to effectuate its purpose of circumventing fabrication."

{¶ 25} The decision of the United States Supreme Court in *Chambers* is instructive in our consideration of Evid.R. 804(B)(3) here. In that case, Chambers called three witnesses to testify that they had heard another man, Gable McDonald, admit to the murder for which Chambers had been charged. The trial court excluded that testimony, however, because the state's hearsay rules did not contain an exception for statements against penal interest. The United States Supreme Court held that the exclusion of that testimony, coupled with the trial court's refusal to allow Chambers to cross-examine McDonald—who had repudiated his confession while on the stand—violated Chambers's right to present a complete defense.

{¶ 26} In its analysis, the court acknowledged the view that "confessions of criminal activity are often motivated by extraneous considerations and, therefore, are not as inherently reliable as statements against pecuniary or proprietary interest." 410 U.S. at 299–300, 93 S.Ct. 1038, 35 L.Ed.2d 297. The court further

---

1. In *Sumlin*, we noted that Ohio's Evid.R. 804(B)(3) is identical to Fed.R.Evid. 804(b)(3) except in one regard: "the federal rule reads that a statement 'offered to *exculpate* the accused' must be accompanied by corroborating circumstances, while Ohio's rule applies to a statement, 'whether offered to *exculpate or inculpate* the accused * * *.' (Emphasis added.) Since this case is not about the admissibility of a statement offered to inculpate the accused, the difference between the two rules does not come into play, and we may look to cases interpreting the federal rule as persuasive precedent." 69 Ohio St.3d at 108, 630 N.E.2d 681, fn. 1. The same may be said in the instant matter.

stated, "Although perhaps no rule of evidence has been more respected or more frequently applied in jury trials than that applicable to the exclusion of hearsay, exceptions tailored to allow the introduction of evidence which in fact is likely to be trustworthy have long existed. The testimony rejected by the trial court here bore persuasive assurances of trustworthiness and thus was well within the basic rationale of the exception for declarations against interest." Id. at 302, 93 S.Ct. 1038, 35 L.Ed.2d 297.

{¶ 27} The indicia of trustworthiness specifically identified by the court included (1) that McDonald's out-of-court confession "was corroborated by some other evidence in the case" and (2) that "McDonald was present in the courtroom and was under oath." Id. at 300, 301, 93 S.Ct. 1038, 35 L.Ed.2d 297. Thus, the court implicitly established that corroborating evidence and the availability of the declarant are important factors in determining the admissibility of hearsay statements against penal interest. See also *Sumlin*, 69 Ohio St.3d at 110, 630 N.E.2d 681.

{¶ 28} Evid.R. 804(B)(3) requires a trial court to find the same indicia of trustworthiness before admitting hearsay statements against penal interest: an unavailable declarant's statement against penal interest is inadmissible "unless corroborating circumstances clearly indicate the trustworthiness of the statement." And, as one treatise notes, "The against-interest exception was drafted with *Chambers* in mind and requires 'corroborating circumstances' for statements offered to exonerate defendants, the justification being that they can be fabricated by friendly defense witnesses (and attributed to unavailable speakers) and are hard to rebut even if false." Mueller & Kirkpatrick, Evidence (1995) 1118, Section 8.82.

{¶ 29} Because Fed.R.Evid. 804(b)(3) reflects the considerations identified in *Chambers,* federal courts have consistently rejected claims that the rule arbitrarily or disproportionately deprives defendants of the right to present a complete defense. For example, in *United States v. Barrett* (C.A.1, 1976), 539 F.2d 244, 253, the court stated, "Rule 804(b)(3) reflects Congress' attempt to strike a fair balance between exclusion of trustworthy evidence * * * and indiscriminate admission of less trustworthy evidence which, because of the lack of opportunity for cross-examination and the absence of the declarant, is open to easy fabrication. Clearly the federal rule is no more restrictive than the Constitution permits, and may in some situations be more inclusive." Similarly, in *LaGrand v. Stewart* (C.A.9, 1998), 133 F.3d 1253, 1268, the court concluded that "given the inherent unreliability of corollary exculpatory statements, Rule 804(b)(3)'s requirement that such statements be clearly corroborated is entirely legitimate and reasonable."

{¶ 30} Accordingly, we hold that the corroboration requirement of Evid.R. 804(B)(3) rationally serves a legitimate interest in the admission of trustworthy evidence, and therefore exclusion of a defendant's proffered evidence for lack of corroboration does not deprive a defendant of the right to present a complete defense. As we stated in *Sumlin*, 69 Ohio St.3d at 111, 630 N.E.2d 681, "Through Evid.R. 804(B)(3), Ohio has addressed one of the principal concerns of cases such as *Chambers*, which is that a criminal defendant's reliable evidence should not be excluded through application of hearsay rules that do not adequately protect due process rights. Evid.R. 804(B)(3) strikes a balance between hearsay statements against penal interest which are sufficiently trustworthy to be admissible and those which are not."

{¶ 31} *Holmes* is distinguishable in this regard and does not affect our conclusion. While the United States Supreme Court declared the South Carolina evidentiary rule in *Holmes* arbitrary and illogical because it excluded the defendant's exculpatory evidence based on the sheer strength of the state's evidence of guilt, here Evid.R. 804(B)(3) focuses on the trustworthiness of the exculpatory evidence itself, just as the United States Supreme Court did in *Chambers*.

{¶ 32} In this case, the trial court ruled that the corroborating evidence did not clearly indicate the trustworthiness of Carlisle's statements that he had shot Stith, and thus the trial court excluded four witnesses' testimony to the extent that they would have testified about what Carlisle told them. While the court's ruling had the effect of precluding a portion of Swann's defense, the rule nonetheless is constitutional.

{¶ 33} As we stated in *Sumlin*, "[a] decision whether to admit the hearsay statement of an unavailable declarant pursuant to Evid.R. 804(B)(3) is one within the discretion of the trial court." 69 Ohio St.3d at 108, 630 N.E.2d 681, citing *State v. Landrum* (1990), 53 Ohio St.3d 107, 114, 559 N.E.2d 710, and *Salvador*, 820 F.2d 558, 561. Here, the court of appeals has not reached a decision on whether the trial court abused its discretion by finding insufficient corroborating evidence to support the trustworthiness of Carlisle's statements against penal interest. Although Judge Brown found sufficient corroboration and Judge Sadler found no abuse of discretion, Judge Tyack did not address the issue. Thus, we remand to the court of appeals for further proceedings not inconsistent with this opinion.

Judgment reversed
and cause remanded.

MOYER, C.J., and O'CONNOR and CUPP, JJ., concur.

PFEIFER, LUNDBERG STRATTON, and LANZINGER, JJ., concur in part and dissent in part.

---

**LUNDBERG STRATTON, J., concurring in part and dissenting in part.**

{¶ 34} In reversing the court of appeals, the majority holds that "[t]he corroboration requirement of Evid.R. 804(B)(3) rationally serves a legitimate interest in the admission of trustworthy evidence." Syllabus. However, because the court of appeals did not determine whether the trial court abused its discretion by finding insufficient corroborating evidence to support the trustworthiness of Carlisle's confession, the majority remands this cause to the court of appeals to make that determination. I believe that the testimony in Swann's proffer to the trial court clearly corroborates Carlisle's confession. Therefore, I agree with the majority's holding that the Evid.R. 804(B)(3) corroboration requirement is constitutional, but I would remand the cause for retrial with instructions to admit Carlisle's confession.

{¶ 35} A statement against interest tending to expose the declarant to criminal liability will not be admitted unless "corroborating circumstances clearly indicate the trustworthiness of the statement." Evid.R. 804(B)(3); see also *State v. Gilliam* (1994), 70 Ohio St.3d 17, 635 N.E.2d 1242.[2] "The determination of whether corroborating circumstances are sufficient to admit statements against penal interest, as a hearsay exception, generally rests within the discretion of the trial court." *State v. Landrum* (1990), 53 Ohio St.3d 107, 114, 559 N.E.2d 710, citing *United States v. Guillette* (C.A.2, 1976), 547 F.2d 743, 754.

{¶ 36} Particular circumstances make certain types of corroborating evidence more persuasive in bolstering the trustworthiness of a statement against penal interest. For example, statements made spontaneously shortly after the crime to a close acquaintance support the trustworthiness of a statement against interest. *Landrum*, 53 Ohio St.3d at 114, 559 N.E.2d 710, citing *Chambers v. Mississippi* (1973), 410 U.S. 284, 93 S.Ct. 1038, 35 L.Ed.2d 297. Statements to close family members generally have " 'particularized guarantees of trustworthiness.' " *United States v. Westmoreland* (C.A.7, 2001), 240 F.3d 618, 628, quoting *United States v. Tocco* (C.A.6, 2000), 200 F.3d 401, 416. " 'Even to people we trust completely, we are not likely to admit serious fault of which we are innocent * * *.' 4 Mueller & Kirkpatrick, Federal Evidence (2d Ed.1994) 822–823, Section 496. Thus, where a declarant makes a statement to someone with whom he has a close

---

2. To admit a statement against interest that tends to expose the out-of-court declarant to criminal liability, the declarant must be unavailable to testify and corroborating circumstances must clearly indicate the trustworthiness of the statement. Only the trustworthiness of Carlisle's statement is in question in the instant case.

personal relationship, such as a spouse, child, or friend, courts usually hold that the relationship is a corroborating circumstance *supporting* the statement's trustworthiness." (Emphasis sic.) *State v. Yarbrough,* 95 Ohio St.3d 227, 2002–Ohio–2126, 767 N.E.2d 216, ¶ 53, citing *Green v. Georgia* (1979), 442 U.S. 95, 97, 99 S.Ct. 2150, 60 L.Ed.2d 738; *United States v. Tocco; United States v. Boone* (C.A.9, 2000), 229 F.3d 1231, 1234; *United States v. Westmoreland* (C.A.7, 2001), 240 F.3d 618, 627–628.

{¶ 37} In the case at bar, Swann proffered the testimony of four witnesses. One of the witnesses, Tia Holland, was Swann's girlfriend. Holland testified that because Carlisle's mother was a drug addict, Holland and Swann had cared for Carlisle for several years. They made sure that Carlisle had food, shelter, and clothing and urged him to attend school. Holland testified that Carlisle thought of her as a big sister, and Swann as a big brother.

{¶ 38} Holland also testified that near the end of June 2005, Carlisle made the first of several confessions to her that he had shot Stith. Holland testified that Carlisle elaborated that he was behind a bush when he shot Stith. Finally, Holland testified that Carlisle was motivated to shoot Stith because Stith had made sexual advances toward Carlisle's girlfriend.

{¶ 39} Another witness, Lisa Hughes, testified that during a visit on a Saturday in July 2005, she and Carlisle were having a discussion about how her house had been broken into twice. After suggesting that Hughes might want to get a gun to protect herself, Carlisle then bragged to her that he had shot Stith. Hughes testified that Carlisle told her that he had shot from a bush with a "chopper," i.e., some type of firearm.

{¶ 40} Hughes's daughters, Cierra and Tiffany, testified that they were also present in July 2005 when Carlisle confessed that while in a bush he had shot some dude with a "chopper." Although Tiffany could not identify the victim by name, Cierra testified that the victim was Stith.

{¶ 41} All four witnesses consistently corroborated Carlisle's confession to shooting Stith with some detail, such as Carlisle's position behind a bush when he shot Stith with a "chopper." Moreover, Hughes and her two daughters testified that Carlisle confessed to them within a month of the shooting, and Holland testified that Carlisle confessed to her within days of the shooting. There is no indication that any of these witnesses were coerced to testify. The spontaneity and timing of this testimony suggest that it was not manufactured.

{¶ 42} Further, because Holland and Carlisle are essentially family, her testimony identifying him as having confessed to the shooting carries particularized trustworthiness. Holland would not have been motivated to provide such damaging testimony against Carlisle unless it was true.

{¶ 43} I believe that the jury should have been allowed to hear and weigh this evidence. See *Landrum,* 53 Ohio St.3d at 114, 559 N.E.2d 710 (the credibility of corroborating witnesses does not affect the admissibility of the hearsay statement, but is for the jury to evaluate). Therefore, I would hold that the trial court abused its discretion in holding that the evidence proffered by Swann was insufficient to confirm the trustworthiness of Carlisle's confession and would remand this cause for retrial with instructions for the trial court to admit Carlisle's confession. Accordingly, I concur in part and dissent in part.

PFEIFER and LANZINGER, JJ., concur in the foregoing opinion.

_____

Ron O'Brien, Franklin County Prosecuting Attorney, and Seth L. Gilbert, Assistant Prosecuting Attorney, for appellant.

Dianne Worthington, for appellee.