703 S.E.2d 512

**The STATE, Respondent,**

v.

**Darrell BURGESS, Appellant.**

**No. 4765.**

Court of Appeals of South Carolina.

Heard May 19, 2010.
Decided Dec. 15, 2010.
Rehearing Denied Jan. 28, 2011.

Deputy Chief Appellate Defender Robert M. Dudek, of Columbia, for Appellant.

Attorney General Henry Dargan McMaster, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attor-

ney General Donald J. Zelenka, Senior Assistant Attorney General William Edgar Salter, III, all of Columbia; and Solicitor Donald V. Myers, of Lexington, for Respondent.

FEW, C.J.

Darrell Burgess was convicted of the drug-related murders of David Slice and Kim Fauscette. The trial judge sentenced Burgess to two life sentences for the murders, and five years for possession of a firearm during the commission of a violent crime. Burgess has raised two issues on appeal. First, he challenges the trial judge's decision not to remove a juror who realized after jury selection that the brother of Slice's estranged wife worked for him. Second, he argues the judge violated his constitutional right to present a complete defense by excluding evidence of third party guilt. We affirm.

## I. Facts

Slice and Fauscette lived together in a "crack house" in Gaston with at least one other person. During the evening of September 5, 2005, and continuing into the following morning, Slice, Fauscette and a crack dealer named James Johnson had been talking, watching television, drinking alcohol and smoking crack in the mobile home. Before dawn on September 5, Burgess arrived unexpectedly and Fauscette allowed him inside. Burgess explained that he wrecked his car and was running from the police. Burgess did not mention that Michael Wise drove him to his house after the wreck so Burgess could get his gun and Wise was waiting outside. Burgess, Slice, Fauscette and Johnson sat around for ten or fifteen minutes while Burgess waited for Johnson to leave. Eventually, Burgess stood up and shot Slice three times and Fauscette twice, killing them both. Johnson ran away when Burgess's gun emptied. Burgess fled the scene with Wise.

## II. The Decision not to Remove the Juror

After the jury was selected but before opening statements, a member of the jury notified the deputy clerk of court that "he recognized a lady in the audience."[1] The judge brought the juror into the courtroom to question him. The juror

---

1. The record does not indicate whether the jury had been sworn.

explained that after jury selection he recognized a woman in the courtroom whom he believed to be Georgette Slice. Georgette, who had not been introduced to the jury panel during voir dire, was the estranged wife of David Slice, and the sister of a man the juror supervised at work. The judge asked the juror if he could still be a fair and impartial juror to both the State and the defense, to which the juror responded "yes, sir." Outside of the juror's presence, the judge asked if either side wanted additional voir dire. Burgess requested that the juror be asked whether he discussed the situation with any other members of the jury, and that the juror be removed for cause. After returning to the courtroom, the juror testified he had not discussed it with anyone in the jury room. He again testified he could be fair and impartial to both sides. The juror also testified he had not heard anything about the case and did not even know the murders occurred. Neither side requested further voir dire.

We find no error in the judge's decision not to remove the juror. First, the fact that a juror has some relationship with the victim does not automatically require the trial judge to remove the juror. *See State v. Jones,* 298 S.C. 118, 121, 378 S.E.2d 594, 596 (1989) ("The mere fact that a person is a friend or acquaintance of the deceased does not render him incompetent as a juror."); *State v. Wells,* 249 S.C. 249, 259–60, 153 S.E.2d 904, 909–10 (1967) (affirming qualification of a juror who directly employed victim a year or more prior to trial); *State v. Hilton,* 87 S.C. 434, 439, 69 S.E. 1077, 1078 (1910) ("There is no rule of the common law, nor is there a statute disqualifying a juror on account of his relationship to a witness, either by affinity or consanguinity, within any degree."). Second, the juror did not conceal any information requested during voir dire.[2] Finally, the judge acted within his discretion in finding the juror could be fair and impartial. *See State v. Mercer,* 381 S.C. 149, 158, 672 S.E.2d 556, 560–61

---

2. The trial judge asked whether "any member of the jury panel or a member of your immediate family[,] were they close personal friends of the victims ...?" The record does not indicate whether the juror even knew David Slice. They were not "close personal friends." The only other relevant questions were whether the jurors "had any knowledge about the case" or had ever "heard or known anything about the case from any source whatsoever[.]"

(2009) (describing the trial judge's broad discretion to determine whether a juror is qualified); *State v. Bell,* 374 S.C. 136, 147, 646 S.E.2d 888, 894 (Ct.App.2007) ("A decision on whether to dismiss a juror and replace her with an alternate is within the sound discretion of the trial court. . . .").

Burgess argues, however, that the juror should have been excused based on the supreme court's reasoning in *State v. Stone,* 350 S.C. 442, 567 S.E.2d 244 (2002). We believe Burgess misinterprets the opinion. In *Stone,* the State called the defendant's aunt to testify during the penalty phase of a capital trial. 350 S.C. at 448, 567 S.E.2d at 247. One of the jurors realized she knew the aunt, and the trial judge granted the State's request to remove the juror. *Id.* On appeal, the supreme court quoted its decision in *State v. Woods:*

> When a juror conceals information inquired into during voir dire, a new trial is required only when the court finds the juror intentionally concealed the information, *and* that the information concealed would have supported a challenge for cause or would have been a material factor in the use of the party's peremptory challenges.

350 S.C. at 448, 567 S.E.2d at 247 (emphasis added) (quoting *State v. Woods,* 345 S.C. 583, 587–88, 550 S.E.2d 282, 284 (2001)). Calling *Woods* "instructive," the *Stone* court held the removal of the juror was error because neither of the criteria listed in *Woods* existed. 350 S.C. at 448–49, 567 S.E.2d at 247–48. First, the court stated "[i]t is patent here that [the juror's] failure to disclose her acquaintance with [the witness] was innocent." 350 S.C. at 448, 567 S.E.2d at 247. Second, the court stated "we find her scant acquaintance would neither have supported a challenge for cause nor would it have been a material factor in the state's exercise of its peremptory challenges." 350 S.C. at 448, 567 S.E.2d at 247–48. However, either of those findings would have independently rendered the trial judge's removal of the *Stone* juror erroneous.

When a party contends a juror should be removed for failure to disclose information during voir dire, *Stone* requires the trial judge to consider the two criteria from *Woods.* If the judge finds both of the *Woods* criteria exist, the judge must remove the juror. However, if either of the criteria is absent, the judge may not remove the juror on that basis. Here, we

need only look to the absence of the first criterion to affirm. As in *Stone,* this juror's failure to disclose the information was innocent. Thus the removal of the juror would have been error. *See Smith v. State,* 375 S.C. 507, 518, 654 S.E.2d 523, 529 (2007) ("Where a juror, without justification, fails to disclose a relationship, it may be inferred . . . that the juror is not impartial. On the other hand, where the failure to disclose is innocent, no such inference may be drawn." (quoting *Woods,* 345 S.C. at 587–88, 550 S.E.2d at 284)).

■ Finally, Burgess argues the trial judge applied the wrong legal standard in deciding not to remove the juror. In making this argument, Burgess focuses on one comment made by the judge immediately after he denied the motion to remove the juror: "I think I have to take jurors at their word. I can't second guess that. . . . I can't sit up here and decide that jurors won't follow the law." The State contends the argument is not preserved for appellate review. We agree.

■ The rules of issue preservation impose on counsel a duty to challenge a statement of law made by the trial judge which counsel believes to be erroneous.

> A litigant must object to inadequate . . . conclusions of law in order to give the trial court an opportunity to correct them. . . . While a party has the right to assume that the trial court knows and will properly apply the law, this does not excuse the failure to seek correction of an error once the complaining party becomes aware of it.

89 C.J.S. *Trial* § 1134 (2001). *See also I'On, LLC v. Town of Mt. Pleasant,* 338 S.C. 406, 422, 526 S.E.2d 716, 724 (2000) ("The losing party must first try to convince the lower court it has ruled wrongly. . . ."). Burgess's failure to challenge the judge's comment and seek clarification of the basis of his ruling leaves the issue unpreserved for two reasons.

First, we cannot determine the correct context in which to interpret the comment. Burgess argues the judge was stating the legal standard he had used in deciding not to remove the juror. The State argues, however, the comment simply indicates the judge expected the jurors to follow his instructions on the law. *See U.S. v. Olano,* 507 U.S. 725, 740, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993) (noting "the almost invariable assumption of the law that jurors follow their instructions")

(quoting *Richardson v. Marsh*, 481 U.S. 200, 206, 107 S.Ct. 1702, 95 L.Ed.2d 176 (1987)). Second, even if he was addressing the standard for removing the juror, we cannot determine that he applied the wrong standard. The judge made the comment immediately after he ruled. In the ruling itself, however, he stated: "I would have to deny your motion based on *State v. Elmore.*" While the comment cited by Burgess would indicate the judge used an incorrect standard, the reference to *Elmore* indicates he used the correct standard.[3]

If Burgess had sought correction of the alleged error at trial, we would be able to determine which issue the trial judge was addressing, and whether he was correct. Because we cannot determine either, the issue is not preserved.

### III. Third Party Guilt and the Right to Present a Complete Defense

Burgess offered the testimony of five witnesses who would have testified that the victims had been threatened over their drug debts in the months leading up to the murders. On appeal he contends the trial judge's decision not to allow their testimony before the jury violated his constitutional right to present a complete defense. We conclude the judge ruled correctly.

The United States Constitution guarantees a criminal defendant the right "to present a complete defense." *Crane v. Kentucky*, 476 U.S. 683, 690, 106 S.Ct. 2142, 90 L.Ed.2d 636 (1986). This right is also guaranteed by our

---

3. In *State v. Elmore*, 279 S.C. 417, 308 S.E.2d 781 (1983) *overruled on other grounds by State v. Torrence*, 305 S.C. 45, 406 S.E.2d 315 (1991), the defendant asked the trial court to disqualify a juror for cause because one of the assistant solicitors was the juror's daughter's closest friend. 279 S.C. at 420, 308 S.E.2d at 784. The supreme court characterized the trial judge's ruling as follows: "The trial judge re-examined [the juror] and *assured himself* that the juror was impartial." *Id.* (emphasis added). The *Elmore* court then cited *State v. Gulledge*, in which the supreme court stated: "The trial judge has the duty to *assure himself* that every juror is unbiased, fair and impartial." 277 S.C. 368, 370, 287 S.E.2d 488, 489 (1982) (emphasis added). Moreover, after the juror in the case before us initially testified he could be fair and impartial, the judge asked both sides if they requested any additional voir dire. If the judge felt he was bound by the juror's answer, he would have had no reason to offer further questioning.

State constitution: "Any person charged with an offense shall enjoy the right . . . to be fully heard in his defense. . . ." S.C. Const. art. I, § 14 (2009). *See* S.C.Code Ann. § 17–23–60 (2003) ("Every person accused shall, at his trial, be allowed . . . to produce witnesses and proofs in his favor. . . ."); *State v. Lyles*, 379 S.C. 328, 341, 665 S.E.2d 201, 208 (Ct.App.2008). In *Chambers v. Mississippi*, 410 U.S. 284, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973), the United States Supreme Court stated: "Few rights are more fundamental than that of an accused to present witnesses in his own defense." 410 U.S. at 302, 93 S.Ct. 1038. However, the right to introduce even relevant evidence "is not unlimited, but rather is subject to reasonable restrictions." *U.S. v. Scheffer*, 523 U.S. 303, 308, 118 S.Ct. 1261, 140 L.Ed.2d 413 (1998). The exclusion of witness testimony does not violate a defendant's constitutional right to present evidence so long as the evidence rules are "not 'arbitrary' or 'disproportionate to the purposes they are designed to serve.' " *Id.* (quoting *Rock v. Arkansas*, 483 U.S. 44, 56, 107 S.Ct. 2704, 97 L.Ed.2d 37 (1987)). In this case, Burgess's argument that his right to present a defense was violated is refuted by the trial judge's correct application of the law of third party guilt to the facts of the case.

As the trial judge correctly stated, the admissibility of evidence of third party guilt is governed by the rule set forth in *State v. Gregory*, 198 S.C. 98, 16 S.E.2d 532 (1941). *See State v. Cope*, 385 S.C. 274, 292–93, 684 S.E.2d 177, 186–87 (Ct.App.2009) (quoting *State v. Gregory* as the rule governing admissibility of evidence of third party guilt); *State v. Swafford*, 375 S.C. 637, 641–43, 654 S.E.2d 297, 299–300 (Ct.App. 2007) (affirming application of *State v. Gregory* ). In *Gregory*, our supreme court stated:

> [T]he evidence offered by accused as to the commission of the crime by another person must be limited to such facts as are inconsistent with his own guilt, and to such facts as raise a reasonable inference or presumption as to his own innocence; evidence which can have (no) other effect than to cast a bare suspicion upon another, or to raise a conjectural inference as to the commission of the crime by another, is not admissible. . . . But before such testimony can be received, there must be such proof of connection with it, such a train of facts or circumstances, as tends clearly to point

out such other person as the guilty party. Remote acts, disconnected and outside the crime itself, cannot be separately proved for such a purpose.

198 S.C. at 104–05, 16 S.E.2d at 534–35 (internal citations omitted).

The trial judge applied the *Gregory* standard correctly. The judge listened to each witness's testimony outside the presence of the jury and provided Burgess the opportunity to argue its admissibility. After quoting *Gregory*, the judge noted that some of the evidence related to events occurring more than eight months before the murders, and that even the most recent events occurred more than two weeks before. He found that none of the evidence was inconsistent with Burgess's guilt and concluded "it's mere conjecture or surmise." The exclusion of the testimony was consistent with *Gregory*, and within the trial judge's discretion.

Burgess argues, however, that this case is controlled by the decision of the United States Supreme Court in *Holmes v. South Carolina*, 547 U.S. 319, 126 S.Ct. 1727, 164 L.Ed.2d 503 (2006). Burgess is correct that the Supreme Court concluded "the rule applied in [*State v. Holmes* ][4] by the State Supreme Court violates a criminal defendant's right to have 'a meaningful opportunity to present a complete defense.' " 547 U.S. at 331, 126 S.Ct. 1727 (quoting *Crane*, 476 U.S. at 690, 106 S.Ct. 2142). However, Burgess fails to understand that it was not the rule of *Gregory* which offended the defendant's rights. Rather, it was the "radically changed and extended" rule of *State v. Gay*, 343 S.C. 543, 541 S.E.2d 541 (2001), and *State v. Holmes*. 547 U.S. at 328–31, 126 S.Ct. 1727. In fact, the Supreme Court specifically stated that the rule of *State v. Gregory* is the type of rule that does not deny a defendant his right to present evidence. 547 U.S. at 328, 126 S.Ct. 1727. *Holmes v. South Carolina* preserves *Gregory* as the appropriate standard for evaluating the admissibility of evidence of third party guilt. The trial judge in this case applied *Gregory* correctly, and there was no error.

**AFFIRMED.**

THOMAS and PIEPER, JJ., concur.

---

4.  361 S.C. 333, 605 S.E.2d 19 (2004).